**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| San Carlos Apache Tribe,<br><br>Plaintiff,<br><br>v.<br><br>Alex Azar, Secretary, U.S. Department of Health and Human Services; Michael Weahkee, Principal Deputy Director, Indian Health Service; United States of America,<br><br>Defendants. | No. CV-19-05624-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 13). For the reasons stated below, the motion shall be granted.

**A.    25 U.S.C. § 5325(a)**

The Indian Health Service ("IHS") is not required by the Indian Self-Determination and Education Assistance Act of 1975, 25 U.S.C. § 5301 *et seq.* ("ISDEAA"), to pay Plaintiff San Carlos Apache Tribe's (the "Tribe") indirect contract support costs associated with the income it received from third-party payors. This conclusion is principally informed by the language of 25 U.S.C. § 5325(a), which outlines the funds IHS must provide to federally recognized Indian tribes under self-determination contracts such as the one entered into between IHS and the Tribe.[1] (*See generally* Doc. 13-2.)

---

[1] Defendants attached the Tribe's IHS contract to their motion. While the Tribe did not attach it to their complaint, because this contract "forms the basis of" the Tribe's claims, it has been incorporated by reference therein and the Court has considered it. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court has also considered the

The first type of funding is provided for direct program costs, which is known as the "Secretarial Amount." *See Swinomish Indian Tribal Cmty. v. Azar*, 406 F. Supp. 3d 18, 21 (D.D.C. 2019), *appeal docketed*, 19-5299 (D.C. Cir. Oct. 31, 2019). This funding includes an amount of funds that "shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract." 25 U.S.C. § 5325(a)(1). "In other words, a tribe receives the amount the Secretary would have provided for the programs, functions, services, and activities had the IHS retained responsibility for them." *Swinomish Indian Tribal Cmty.*, 406 F. Supp. 3d at 21 (internal alterations, quotation marks, and citation omitted).

The second type of funding is provided for contract support costs. This type of funding is added to the Secretarial Amount "for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management," except such activities that "normally are not carried on by the respective Secretary in his direct operation of the program" or "are provided by the Secretary in support of the contracted program from resources other than those under the contract." 25 U.S.C. § 5325(a)(2). "[E]ligible [contract support] costs for the purposes of receiving funding" include direct and indirect contract support costs. *See*

---

annual funding agreements Defendants attached (Doc. 13-2 at 16-21, 23-30) because those agreements are incorporated into the contract itself (Doc. 13-2 at 3-13). (*See* Doc. 13-2 at 12.) Because the fiscal year 2013 scope of work document (Doc. 13-3) is incorporated into the contract through the fiscal year 2013 funding agreement, the Court has considered that document as well. (*See* Doc. 13-2 at 28.)

Meanwhile, the Tribe attached three documents to the Complaint: Part 6, Chapter 3 of the 2007 Indian Health Manual (Docs. 1-1, 1-2), the Tribe's claim letter to IHS (Doc. 1-3), and IHS's July 2019 decision and counterclaim (Doc. 1-4). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The types of instruments that typically qualify for incorporation under Rule 10(c) "'consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based.'" *See DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (quoting *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989)); *see also Trombley Enters., LLC v. Sauer, Inc.*, Case No. 5:17-cv-04568-EJD, 2018 WL 4407860, at *2 (N.D. Cal. Sept. 17, 2018) ("Common exhibits to complaints include agency decisions, contracts, patents, correspondence, and the like."). The Tribe's exhibits constitute written instruments within the meaning of Rule 10(c), are part of the Complaint, and have been considered.

25 U.S.C. § 5325(a)(3)(A).  Direct costs are "direct program expenses for the operation of the Federal program that is the subject of the contract" and indirect costs are "any additional administrative or other expense related to the overhead incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract."  *Id.*

None of the above provisions makes any reference to third-party revenue.  *See Swinomish Indian Tribal Cmty.*, 406 F. Supp. 3d at 27-28 (finding "§ 5325(a) does not entitle the Tribe to collect CSC [contract support costs] for its expenditure of third-party revenue, as that section's references to the 'Secretarial amount' to which CSC must be added and the 'Federal program' that generates CSC do not include third-party revenue" (footnote omitted)).  While the Tribe argues the "Federal program" language in 25 U.S.C. § 5325(a)(3)(A) signifies Congress' intent that IHS pay contract support costs on "all healthcare activities carried out pursuant to the Tribe's contract with IHS, both the portion funded directly by IHS appropriations and the portion funded by the third-party revenues the Tribe is required to collect and reinvest in the program," (Doc. 21 at 11), to accept this argument would be to read language into the statute that is not there and in effect "enlarge[] . . . it . . . so that what was omitted, presumably by inadvertence, may be included within its scope.  To supply omissions transcends the judicial function."  *See Iselin v. United States*, 270 U.S. 245, 251 (1926) (internal citations omitted).  Moreover, this argument ignores the language that is there, as § 5325(a)(3)(A) refers to a single "Federal program that is the subject of the contract."  25 U.S.C. § 5325(a)(3)(A)(i); 25 U.S.C. § 5325(a)(3)(A)(ii) (including as contract support costs eligible for reimbursement costs of "any additional administrative or other expense related to the overhead incurred by the tribal contractor in connection with the operation of *the* Federal program . . . pursuant to the contract (emphasis added)).  It would be unreasonable to construe this program as anything other than the program or programs[2] IHS would be charged with operating absent an ISDEAA contract.

---

[2] To be sure, "program" is referred to in the plural elsewhere in 25 U.S.C. § 5325, *e.g.*, 25

### B.     25 U.S.C. § 5325(m)

Defendants' argument with regard to 25 U.S.C. § 5325(m) misses the mark. Quoting that section, Defendants contend "Medicare, Medicaid, and other program income is 'earned by a tribal organization in the course of carrying out a self-determination contract,' not provided by the Secretary as part of the Secretarial amount." (Doc. 13 at 11.) But that is not what the statute says. Rather, it provides:

> **(m) Use of Program Income Earned** The program income earned by a tribal organization in the course of carrying out a self-determination contract—
>
> (1) shall be used by the tribal organization to further the general purposes of the contract; and
> (2) shall not be a basis for reducing the amount of funds otherwise obligated to the contract.

25 U.S.C. § 5325(m). This section only concerns how program income—which both sides agree does not come from IHS—can be used, not the types or amounts of funds that IHS must provide. These funds are addressed in 25 U.S.C. § 5325(a).

But this does not mean § 5325(m) is irrelevant, as the language therein informs— and further bolsters—the conclusion regarding the meaning of § 5325(a). "Statutory interpretation must account for both 'the specific context in which language is used' and 'the broader context of the statute as a whole.'" *Castillo v. Metro. Life Ins. Co.*, --- F.3d -- --, ----, No. 19-56093, 2020 WL 4745033, at *6 (9th Cir. Aug. 17, 2020) (internal alterations omitted) (quoting *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014)). Indeed, "[s]tatutory construction is a holistic endeavor." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (internal quotation marks and citations omitted).

Numerous subsections within § 5325(a) refer to funds that are "provided" by the Secretary as part of the Secretarial Amount. *See* 25 U.S.C. §§ 5325(a)(1); (a)(3)(A). Other

---

U.S.C. § 5325(a)(1) ("The amount of funds provided under the terms of self-determination contracts entered into pursuant to this chapter shall not be less than the appropriate Secretary would have otherwise provided for the operation of the *programs* or portions thereof for the period covered by the contract . . . ." (emphasis added)), and multiple programs were performed under the Tribe's IHS contract. (*See* Doc. 13-3.) This fact does not change the outcome; just because "program" can be construed as encompassing multiple IHS-funded programs does not mean it can be construed as encompassing a theoretically unlimited number of programs funded by any number of third-party payors.

- 4 -

subsections refer to contract support costs that must be "paid" by the Secretary. *See id.* at § 5325(a)(5) ("[D]uring the initial year that a self-determination contract is in effect, the amount to be paid under paragraph (2) shall include . . . ."); § 5325(a)(6) ("Costs incurred before the initial year that a self-determination contract is in effect may not be included in the amount required to be paid under paragraph (2) if . . . ."). In contrast, § 5325(m)—the only section in § 5325 concerning program income (and accordingly, third-party revenue)—refers to "income *earned* by a tribal organization in the course of carrying out a self-determination contract." (emphasis added). The Court therefore agrees with the court in *Swinomish Indian Tribal Community* that "[r]ead together, the ISDEAA's various provisions clearly limit the Secretarial amount to funds that the IHS appropriates and exclude from that amount any third-party revenue that the Tribe collects on its own." 406 F. Supp. 3d at 29. Contract support costs accordingly need not be provided for expenditures of third-party revenue.

### C. 25 U.S.C. § 5326

25 U.S.C. § 5326 also dooms the Tribe's claim. That statute states:

> Before, on, and after October 21, 1998, and notwithstanding any other provision of law, funds available to the Indian Health Service in this Act or any other Act for Indian self-determination or self-governance contract or grant support costs may be expended only for costs directly attributable to contracts, grants and compacts pursuant to the Indian Self-Determination Act and no funds appropriated by this or any other Act shall be available for any contract support costs or indirect costs associated with any contract, grant, cooperative agreement, self-governance compact, or funding agreement entered into between an Indian tribe or tribal organization and any entity other than the Indian Health Service.

Accordingly, it "prevents the IHS from paying more than its *pro rata* share of the indirect costs incurred by contracting tribes and tribal organizations." *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 418 (D.D.C. 2008).[3]

---

[3] The *Tunica-Biloxi Tribe* court analyzed this language when it was contained in a different section of the United States Code, 25 U.S.C. § 450j-2.

As an initial matter, Defendants misconstrue this statute, erroneously contending it "prohibits payment of [contract support costs] on all non-IHS funds, including Medicare, Medicaid or any other third-party reimbursements." (*See* Doc. 13 at 13.) The statute prohibits not payment of contract support costs on "all non-IHS funds," but rather payment on such costs "associated with any *contract* . . . entered into between an Indian tribe or tribal organization and any entity other than the Indian Health Service." 25 U.S.C. § 5326 (emphasis added). The legislative history Defendants cite only further confirms this. *See* H.R. Rep. No. 105-609, at 108 (1998) (recommending "specifying that IHS funding may not be used to pay for non-IHS *contract* support costs" (emphasis added)).

For its part, the Tribe correctly notes that "[t]he plain meaning of this provision is that IHS must pay [contract support costs] on costs arising under the ISDEAA contract, but it does not owe [contract support costs] on costs arising under other agencies' contracts or grants." (*See* Doc. 21 at 23.) But it argues the statute nevertheless does not apply here because it seeks contract support costs to cover expenses it incurred "in carrying out programs under its ISDEAA contract with IHS, using third-party revenues it collected and then spent pursuant to that same ISDEAA contract." (*See id.*) In other words, the Tribe seeks contract support costs "directly attributable to" a contract "entered into between an Indian tribe or tribal organization" and IHS. *See* 25 U.S.C. § 5326.

The text of § 5326 compels a different conclusion. The revenue the Tribe obtained from third parties (and therefore the contract support costs thereon) was undoubtedly "attributable" to its contract with IHS, as numerous contract documents contemplate the Tribe generating and spending such revenue. For example, the fiscal year 2013 scope of work document required the Tribe to "[m]aintain an efficient billing system, to maximize third party revenues" and noted that third-party payors "include[]: Medicare, AHCCCS [Arizona's Medicaid agency], Private Insurance, and IHS Contract Health Services." (Doc. 13-3 at 3.) In addition, the contract itself specifies requirements the Tribe must adhere to with regard to "[e]ach contract entered into" by the Tribe "with a third party in connection with performing the obligation of the [Tribe] under this contract." (Doc. 13-2 at 9.)

But just because this revenue was "attributable" to the IHS contract does not mean it was "*directly* attributable" thereto. "Directly" is the key word here and it (like all other words in the statute) must be given effect. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks and citations omitted)); *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004) ("[Courts] must, if possible, construe a statute to give every word some operative effect." (internal citation omitted)). The Tribe insists, without explanation, that the contract support costs it seeks are directly attributable to its IHS contract. The Court however disagrees and finds that for "directly" to be given effect, it must be construed to limit the contract support costs Indian tribes can receive to costs of administering programs that are funded by IHS under IHS contracts.

This finding is principally informed by the definitions of "directly" and the context in which it appears. First, "directly" is defined as (1) "[i]n a straightforward manner," (2) "[i]n a straight line or course," or (3) "[i]mmediately." *Directly*, Black's Law Dictionary (11th ed. 2019); *see also Direct*, Merriam-Webster, https://www.merriam-webster.com/dictionary/direct (last visited on Aug. 27, 2020) (defining "direct," when employed as an adverb, as "from point to point without deviation: by the shortest way," "from the source without interruption or diversion," or "without an intervening agency . . . or step"). Contract support costs associated with third-party revenue do not derive from IHS contracts "[i]n a straight line or course" because third-party revenue does not emanate from IHS "without interruption or diversion." Indeed, such revenue sometimes literally involves "intervening agenc[ies]."

Second, the rest of ISDEAA suggests Congress took special care to include this limiting modifier in this particular context. Indeed, while "attributable" is included numerous times in the section that immediately (or "directly") precedes 25 U.S.C. § 5326, in no instance therein is that word modified by "directly." *See, e.g.*, 25 U.S.C. §§

5325(a)(4) ("For each fiscal year during which a self-determination contract is in effect, any savings attributable to the operation of a Federal program . . . ."); 5325(e) ("Indian tribes and tribal organizations shall not be held liable for amounts of indebtedness attributable to theoretical or actual under-recoveries . . . .").[4]  The legislative history of § 5326 suggests this as well; indeed, in its Report on the Department of the Interior and Related Agencies Appropriations Bill, 1999, the Committee on Appropriations for the House of Representatives criticized the decision in *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997), in which the Tenth Circuit held ISDEAA "require[s] full funding of indirect [contract support] costs and prohibit[s] any adverse adjustments stemming from the failure of other agencies to pay their full share of indirect costs" and effectively forced the United States Department of the Interior's Bureau of Indian Affairs to pay contract support costs on programs funded by the United States Department of Justice.  *See* H.R. Rep. No. 105-609, at 57 ("The Committee is concerned about the Ramah Navajo Chapter v. Lujan settlement concerning contract support and the expectation that the settlement payments from the Claims and Judgment Fund be reimbursed from agency appropriations.  The Committee believes that the court in this case made an erroneous decision and that the Administration erred by failing to appeal."); *Ramah Navajo Chapter*, 112 F.3d at 1462.

The Tribe's third-party revenue could not have been obtained pursuant to its contract with IHS and therefore was not "directly attributable" to it.  Even though the Tribe obtained third-party revenue "while administering programs under its contract with IHS," (Doc. 1, ¶ 34), it only could have done so by first entering into agreements with third-party payors and then billing and collecting from them pursuant thereto.  *See*, *e.g.*, Ctrs. for Medicare & Medicaid Servs., U.S. Dep't of Health & Human Servs., Pub. No. 100-01, Medicare General Information, Eligibility, and Entitlement Manual, Ch. 5, § 10.1, https://www.cms.gov/Regulations-and-

---

[4] While "directly" is employed in another section of ISDEAA, 25 U.S.C. § 5327, that section is materially identical to § 5326; it applies to the Department of the Interior instead of IHS.

Guidance/Guidance/Manuals/Downloads/ge101c05.pdf (listing hospitals, skilled nursing facilities, clinics, rehabilitation agencies, and community mental health centers among "[t]he following provider types" that "must have provider agreements under Medicare"); 42 C.F.R. § 431.107(b) ("A State plan must provide for an agreement between the Medicaid agency and each provider or organization furnishing services under the plan . . . ."); *see also In re TLC Hosps., Inc.*, 224 F.3d 1008, 1011 (9th Cir. 2000) ("In accordance with the terms of the Medicare statute and the regulations promulgated by the Secretary of HHS, a participating facility is reimbursed for the 'reasonable costs' of services rendered to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395x(v)(1)(A), 1395f(b); 42 C.F.R. pt. 413. In order to be reimbursed, however, the participating facility, must agree to certain terms as set forth in 42 U.S.C. § 1395cc." (footnote omitted)); *Neighborhood Health v. Porter*, CASE NO. C11-1391JLR, 2012 WL 13049188, at *1 (W.D. Wash. July 24, 2012) ("As a condition of receiving federal Medicaid funding, the Health Care Authority must have written agreements with medical providers who want to participate in the Medicaid program." (citing 42 U.S.C. § 1396a(a)(27); 42 C.F.R. § 431.107; *Banks v. Sec'y of Ind. Family and Soc. Servs. Admin.*, 997 F.2d 231, 235 (7th Cir. 1993)).  Indeed, the Tribe's IHS contract expressly contemplates the Tribe entering into contracts with third parties. (Doc. 13-2 at 9.)  While such contracts are not alleged in the Complaint, revenue from third parties such as Medicare and Medicaid cannot be collected by virtue of an agreement to which they are absent.  It can therefore hardly be said that the Tribe's third-party revenue was "directly" attributable to its contract with IHS.

Tribes may bristle at this conclusion, claiming it would be unjust to prevent them from receiving contract support costs for their expenditures of revenue that (according to the Tribe) they are required to bill and spend just as IHS usually would.  (*See, e.g.*, Doc. 21 at 7; Doc. 1, ¶ 28.)  The Court acknowledges and agrees with the court in *Tunica-Biloxi Tribe* that the language of § 5326 is "inartful."  *Tunica-Biloxi Tribe*, 577 F. Supp. 2d at 417.  But even inartful language must be followed, and allowing the Tribe to receive contract support costs associated with revenue generated pursuant to contracts to which

IHS is not a party would render meaningless Congress' directive that contract support costs may be expended only for costs "directly attributable" to IHS contracts. *Cf. id.* at 417-18 (acknowledging "the language contained in § 450j-2 is inartful" and explaining how it cuts against congressional purpose, but finding "this does not mean . . . that the plain language of the statute should be neglected altogether, for 'whatever degree of confidence about congressional purpose one derives from the legislative history, that purpose must find expression within the permissible limits of the language before it can be given effect'" (quoting *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C. Cir. 2004))).

Because the contract support costs the Tribe demands were incurred in carrying out programs that were funded by parties other than IHS, the Tribe is not entitled to them under 25 U.S.C. § 5326.

**D.     Relevant Caselaw**

Each side leans heavily on a district court decision; Defendants claim *Swinomish Indian Tribal Community* is in their corner and the Tribe claims *Navajo Health Found.— Sage Mem'l Hosp., Inc. v. Burwell*, 263 F. Supp. 3d 1083 (D.N.M. 2016), is in theirs.[5] First, while Defendants argue *Swinomish Indian Tribal Community* "[p]ersuasively [d]ecided the [i]ssue [p]resented," (Doc. 22 at 2), that case is not entirely relevant because much of the analysis therein was under Title V of ISDEAA, whereas this case arises under Title I. *See, e.g.*, *Swinomish Indian Tribal Cmty.*, 406 F. Supp. 3d at 26-29. While it is true that 25 U.S.C. § 5325(a) applies equally to contracts under Titles I and V, this distinction makes a difference: Title V contains language that is materially different from that in Title I and was integral to the *Swinomish Indian Tribal Community* court's decision. *See., e.g., id.* at 28 (analyzing 25 U.S.C. § 5388(j), which contains "explicit textual reference[s] to third-party revenue" that are not present in Title I). But while such language was integral, it was not indispensable; in addition to finding "§ 5325(a) does not entitle

---

[5] There are no relevant decisions from the Ninth Circuit (or any circuit court, for that matter) on 25 U.S.C. § 5325, § 5326, or § 5327.

the Tribe to collect CSC [contract support costs] for its expenditure of third-party revenue" based on § 5388(j), the court came to that conclusion based on the text of § 5325(a) itself. *See id.* at 27-28. This case therefore has persuasive value. *See supra*, at sections A-B (citing *Swinomish Indian Tribal Cmty.*).

The same cannot be said about *Sage Memorial*. To be sure, while that case is hardly a carbon copy of this one, its relevance cannot seriously be questioned. Indeed, *Sage Memorial* both arose out of Title I of ISDEAA and addressed perhaps the key issue in this case: "whether funding that third parties such as Medicare, Medicaid, and private insurers provide is considered part of federal programming for the purposes of reimbursement under the ISDEAA." *See Sage Mem'l*, 263 F. Supp. 3d at 1164. While the *Sage Memorial* court answered that question in the Tribe's favor, it did not do so persuasively, as it did not engage with the text of any of the statutes discussed above. Instead, that court analyzed language in the plaintiff's annual funding agreements and two other statutes, the Indian Health Care Improvement Act and the Patient Protection and Affordable Care Act. *Id.* at 1164-65. A court must "start with the text of the statute" at issue and 25 U.S.C. § 5325, at least, was at issue there and is here. *See Babb v. Wilkie*, --- U.S. ----, ----, 140 S. Ct. 1168, 1172 (2020) (internal citation omitted). Because the *Sage Memorial* court all but ignored the text of 25 U.S.C. § 5325, its decision is not persuasive.

\* \* \*

Finally, a word is warranted on the Indian canon of statutory construction, on which the Tribe frequently relies. (*See, e.g.*, Doc. 21 at 23-24.) Under this canon, "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) (internal citations omitted). This canon applies in ISDEAA cases. *Seminole Tribe of Fla. v. Azar*, 376 F. Supp. 3d 100, 108 (D.D.C. 2019) ("If there were any doubt that the canon applies with full force in the context of ISDEAA cases, the Act itself puts the doubt to rest: The Act's model contract language expressly incorporates the canon—stating that every self-determination contract provision 'shall be liberally construed to the benefit of the [tribal]

- 11 -

Contractor.'" (quoting 25 U.S.C. § 5329(a)(2))). But even though the canon applies here, it does not alter the outcome. "For one thing, canons are not mandatory rules. They are guides that need not be conclusive." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (internal quotation marks and citation omitted). More importantly, "[t]he canon of construction regarding the resolution of ambiguities in favor of Indians . . . does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress." *See South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986) (footnote omitted). Indeed, the Indian canon of statutory construction is more of a tiebreaker. Based on the issues discussed above, neither 25 U.S.C. § 5325 nor § 5326 is fairly capable of two interpretations and therefore ambiguous. Because there is accordingly no tie to break, that canon is of no consequence.

The deficiencies in Count II outlined above cannot be cured by further pleading. Moreover, the Tribe does not argue for leave to amend. Therefore, Count II shall be dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 13) is granted.

IT IS FURTHER ORDERED that Count II of Plaintiff San Carlos Apache Tribe's Complaint (Doc. 1) is dismissed, with prejudice. No partial judgment shall be entered at this time.

Dated this 31st day of August, 2020.

_____
Neil V. Wake
Senior United States District Judge